**IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| DAMON PURSELL CONSTRUCTION CO., | ) | Case No. 10-44965-11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| BANK OF THE WEST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adversary No.  11-04054 |
| | ) | |
| DAMON PURSELL CONSTRUCTION | ) | |
| COMPANY; MCK PARTNERSHIP, LLC; | ) | |
| KRAUS-ANDERSON CAPITAL, INC.; | ) | |
| SG EQUIPMENT FINANCE USA | ) | |
| CORPORATION; COMMERCIAL CREDIT | ) | |
| GROUP, INC.; and CML-MO CITY | ) | |
| DEVELOPMENT, LLC, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |

**MEMORANDUM OPINION**

On February 25, 2011, Bank of the West ("BOW") filed an eleven-count complaint seeking determinations with regard to the existence, validity, and priority of liens that BOW claims against various items of property owned by the Debtor, Damon Pursell Construction Company.  The matter comes before the Court at this juncture on BOW's motion for summary judgment on Count VII of the complaint, which relates to a "Trommel 1007" excavator.  Defendant Kraus-Anderson Capital, Inc., ("Kraus-Anderson") and Intervener-Defendant National Bank of Kansas City ("NBKC")  have filed cross-motions for summary judgment, each claiming that its lien on the Trommel 1007 is superior to BOW's security interest.

For the reasons stated below, the Court finds that BOW has a first priority security interest in the Trommel 1007 and will, therefore, grant BOW's motion for summary judgment and deny NBKC's and Kraus-Anderson's motions.

**BACKGROUND**

Despite the volume of pleadings on this matter, the relevant facts are not complicated, although distinguishing between the similarly numbered trommels may be confusing at times.

**1.      BOW has a properly perfected security interest in the Debtors' equipment.**

BOW, through its predecessor Commercial Federal Bank, has had a loan relationship with Debtor and one or more of its affiliates since 2005.  That relationship includes a loan and security agreement dated June 24, 2005, granting BOW a valid, enforceable security interest in the Debtor's personal property, including the Trommel 1007 and Trommel 1008 described below.[1]  BOW properly perfected its liens and security interests under the Security Agreement and the Deed of Trust and Security Agreement by filing a financing statement with the Missouri Secretary of State on July 5, 2005.  As of the Petition Date, the Debtor owed BOW approximately $3,855,706.53, based on BOW's proof of claim filed in this case.

**2.      NBKC has a purchase money security agreement in the Trommel 1008.[2]**

On February 23, 2007, the Debtor executed a promissory note for $360,000 payable to Intervenor-Defendant NBKC. NBKC contends that the Debtor used those funds to purchase a 2006 Road Mobile Trommel, serial no. HT-182-M-1008 ("Trommel 1008").  On February 23, 2007, Debtor executed a commercial security agreement granting NBKC a security interest in the Trommel 1008. A financing statement was filed with the Missouri Secretary of State listing the Trommel 1008, along with other property, as collateral for the loan.

---

[1] The Court's determination of lien priority here is limited to the Trommel 1007 and Trommel 1008.  The trommels are large – and expensive – pieces of equipment that were apparently used in the Debtor's stone quarrying business to separate different sizes of crushed stone.

[2] BOW disputes that NBKC has a purchase money security interest ("PMSI") in the Trommel 1008, and NBKC's evidence on this issue is, indeed, lacking.  However, the Court will assume for purposes of this Opinion that NBKC has a PMSI in the Trommel 1008 because it makes no difference in the outcome; NBKC has no legal or equitable right to a lien on the Trommel 1007 based on a PMSI in the Trommel 1008.

**3.      Kraus-Anderson <u>had</u> a purchase money security interest in the Trommel 1007.[3]**

On March 14, 2007, the Debtor executed a promissory note for $462,115.71 payable to Defendant Kraus-Anderson.  The proceeds of the loan were used to purchase a new 2006 Road Mobile Trommel, serial number HT-182M-1007 ("Trommel 1007").  To secure the loan, the Debtor granted Kraus-Anderson a security interest in the Trommel 1007, among other items.  On March 28, 2007, Kraus-Anderson perfected its security interest in the Trommel 1007 by filing a financing statement with the Missouri Secretary of State.

**4.      The Debtor sold the Trommel 1008 (NBKC's collateral) but mistakenly paid off the loan to Kraus-Anderson.**

In July 2008, before the Debtor's bankruptcy was filed, the Debtor sold the Trommel 1008 to a third party.  Instead of using the proceeds to pay off NBKC, the party secured by the Trommel 1008, the Debtor mistakenly paid off the loan to Kraus-Anderson, which was secured by the Trommel 1007.  Kraus-Anderson disputes that its loan has been "paid in full," but the only amounts it claims are outstanding are the expenses it has incurred in this lawsuit; Kraus-Anderson does not dispute that the loan secured by the Trommel 1007 had a zero balance after it received the proceeds of sale of the Trommel 1008.

**5.      The Debtor sells the Trommel 1007.**

On February 18, 2011, Debtor filed its third motion to approve the sale of the Trommel 1007. (The first two motions were withdrawn after BOW filed objections to the motions' proposals to pay the proceeds to parties other than BOW.)   The third sale motion provided that all of the proceeds (except a $27,500 commission) would be placed in escrow if any party objected to the Motion, which BOW did.  On March 4, 2011, the Court entered the following text order approving the sale motion:

> Order of the Court GRANTING the Joint Motion to Sell certain equipment, namely a Hercules Mobile Trommel, HT-182M s/n 1007, including a trommel stand and an electrical power pack s/n HT-2297111, to Bank of America Leasing for $550,000. Of the purchase price, the Debtor may distribute $27,500 to pay the sales commission and $250,000 to Bank of the West to partially satisfy its second priority lien on the equipment.  The balance of the proceeds shall be held in the Debtor's DIP

---
[3] As discussed below, Kraus-Anderson no longer has any interest in the Trommel 1007.

account pending a resolution of the dispute over who holds the first priority lien and
to pay the balance owed to Bank of the West on its second priority lien.

As of January 31, 2011, NBKC was owed $218,759.68 on the loan secured by the Trommel

1008, so the Order left sufficient funds to pay off NBKC if it was later determined that its interest

was superior to BOW's.

This adversary proceeding followed.

## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Bankruptcy Procedure 7056(c), applying Federal Rule of Civil Procedure

56(c), provides that summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."[4]

The moving party has the initial burden of proving that there is no genuine issue as to any material

fact.[5]  Once the moving party has met this initial burden of proof, the non-moving party must set

forth specific facts sufficient to raise a genuine issue for trial; it may not rest on its pleadings or mere

assertions of disputed facts to defeat the motion.[6]

## DISCUSSION

A.    **BOW has a first priority security interest in the Trommel 1007.**

BOW's argument, like the facts, is straightforward:  Prior to their sale, BOW held a valid,

second priority security interest in the Trommel 1007 and 1008.  When the Debtor sold the Trommel

1008 and used the proceeds to pay off the loan to Kraus-Anderson secured by the Trommel 1007,

Kraus-Anderson's security interest in the Trommel 1007 was extinguished; BOW moved into first

place; and the buyer of the Trommel 1008 bought the property, presumably subject to NBKC's lien.[7]

---

[4] *Celotex v. Catrett*, 477 U.S. 317, 322 (1986).

[5] *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161 (1970).

[6] *See Matsushita Elec. Indus. Co., Lts. V. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

[7] Under Mo. Rev. Stat. § 400.9-315(a)(1), a security interest continues in collateral notwithstanding sale,
lease, license, exchange, or other disposition of the collateral unless the secured party authorized the disposition free
of the security interest.  It is doubtful that NBKC authorized the sale ofTrommel1008 free of its security interest
since NBKC apparently did not even know the sale occurred.

Therefore, BOW argues, NBKC has no claim against the Trommel 1007; its remedy is either to enforce its lien against the Trommel 1008 (or its proceeds) or file an unsecured claim against the Debtor. And Kraus-Anderson has no interest in the Trommel 1007 to warrant protection in this adversary proceeding, let alone to serve as collateral for its attorney's fees incurred herein.

The Court agrees.

When Kraus-Anderson's loan secured by the Trommel 1007 was paid off at the time the Trommel 1008 was sold, its security interest in the Trommel 1007 was extinguished.[8] The fact that Kraus-Anderson failed to terminate its financing statement at that time does not give the financing statement any additional vitality or permit Kraus-Anderson to resurrect it later to secure future obligations (which in this case Kraus-Anderson manufactured unnecessarily). Had the collateral in question been consumer goods, Kraus-Anderson would have been <u>required</u> to terminate its financing statement against the Trommel 1007 within 20 days after the debt it secured was paid.[9] Instead, Kraus-Anderson only had a duty to file a termination statement within 20 days after a demand from the Debtor.[10] Apparently, the demand was never made or heeded. Absent this coincidence, there would be no financing statement on which Kraus-Anderson or NBKC could assert a security interest superior to BOW's.

Once Kraus-Anderson's first priority PMSI in the Trommel 1007 was extinguished, BOW's second priority interest became a first lien against the property. And since BOW's claim secured by that lien exceeds the proceeds from the sale of the Trommel 1007, it is entitled to all of the remaining proceeds.

## B.      NBKC is not entitled to equitable relief.

NBKC advances two equitable theories – equitable lien and mutual mistake – under which it claims a superior interest in the Trommel 1007. Neither theory has merit.

---

[8] *See In re Leisure Time Sports, Inc.*, 194 B.R. 859, 861 (B.A.P. 9th Cir. 1996) ("A security interest cannot exist ... independent from the obligation which it secures."). *See also Unisys Fin. Corp. v. Resolution Trust Corp.*, 979 F.2d 609, 611 (7th Cir. 1992) ("A lien is parasitic on a claim. If the claim disappears—poof! the lien is gone."); *In re Advanced Aviation, Inc.*, 101 B.R. 310, 313 (Bankr. M.D. Fla.1 989).

[9] Mo. Rev. Stat. § 400.9-513(a).

[10]  Mo. Rev. Stat. §400.9-513(c).

First, as an overarching bar to any equitable relief, NBKC has an adequate remedy at law.[11] As noted, under Mo. Rev. Stat. § 400.9-315(a)(1), a security interest continues in collateral notwithstanding its sale to a third party.[12] And under § 400.9-315(a)(2) a security interest attaches to identifiable proceeds of collateral. So (without commenting on the merits of such an action) NBKC has the right to enforce its lien on the Trommel 1008 despite its sale to the third party, or it could seek to enforce its lien against the proceeds of the Trommel 1008 (which might explain Kraus-Anderson's appearance in this lawsuit). NBKC could also file an unsecured claim in the Debtor's bankruptcy, which claims are to be paid 100% under the Debtor's confirmed plan of reorganization.

Second, there is no factual basis to impose an equitable lien on the Trommel 1007 in NBKC's favor. As NBKC accurately states, "An equitable lien is merely an encumbrance on property that is construed based on the express agreement of the parties or with reference to the situation of the parties at the time of the contract and by the attendant circumstances."[13] "An equitable lien may arise from an express contract or from principles of justice, or both."[14]

Here, there was no agreement, intention, or contemplation by any of the parties that the Trommel 1007 should serve as collateral for NBKC's loan to purchase the Trommel 1008. Moreover, neither the"attendant circumstances" nor "principles of justice" warrant the imposition of an equitable lien on the Trommel 1007 to "punish" BOW for taking advantage of its second priority lien position or to rescue NBKC from the consequences of the Debtor's mistake. In the Court's estimation, the only reason NBKC is claiming a security interest in the Trommel 1007 is because it is so similar to the Trommel 1008. It is unlikely that NBKC would be claiming rights in, for example, a computer system, if the Debtor had used the proceeds from the Trommel 1008 to pay off a loan secured by that collateral. The fact that the two pieces of equipment are so similar and so similarly numbered  is not a sufficient basis to impose an equitable lien and upset established rules of priority.

---

[11] *See In re Eccles*, 393 B.R. 845, 854 (Bankr. W.D. Mo. 2008).

[12] *See supra* n. 6.

[13] NBKC Suggestions, p. 5 (quoting *Tobin v. Insurance Agency Co.*, 80 F.2d 241, 243 (8th Cir. 1935)).

[14] *Id*. (quoting *Exchange State Bank v. Federal Surety Co.*, 28 F.2d 485, 487 (8th Cir. 1928)).

Finally, NBKC argues that the security agreement between it and the debtor should be reformed under the doctrine of mutual mistake in such a way that NBKC would have a first priority lien in the Trommel 1007. Aside from the fact that reforming the security agreement would have absolutely no effect on the UCC financing statements filed with the Missouri Secretary of State, so any reformed security agreement would be unperfected, the doctrine of mutual mistake is also wholly inapplicable to the instant situation.

To reform a contract based on mutual mistake, Missouri law requires proof by clear, cogent and convincing evidence of (1) a preexisting agreement between the contracting parties, (2) a scrivener's mistake in drafting the agreement, and (3) that the mistake was mutual between the contracting parties.[15] None of these elements is present here. There was no agreement between the Debtor and NBKC that the Trommel 1007 should serve as the collateral for the loan purportedly used to purchase the Trommel 1008; there has been no suggestion or evidence that the security agreement between the Debtor and NBKC contains a scrivener's error; and the only mistake that occurred here was unequivocally unilateral – the Debtor paid Kraus-Anderson with the proceeds of NBKC's collateral.

NBKC acknowledges that this is not the typical situation for the application of the mutual mistake doctrine, and NBKC has not presented – nor does the Court find – any compelling reason to extend the doctrine here, especially when its application would prejudice the rights of a third party (BOW) that had no connection with the formation or execution of the contract sought to be reformed.

**C.** **Kraus-Anderson's claim for attorney's fees and expenses is not secured by the Trommel 1007.**

Kraus-Anderson seeks summary judgment on its claim for a first priority lien against the Trommel 1007 for the attorney's fees and expenses incurred in "defending" its security interest in this case. Kraus-Anderson grounds its claim in the indemnity clause in its security agreement with the Debtor, which clause entitles it to a secured claim for any amounts expended in defending against claims and losses arising out of its security interest. This argument defies law and logic.

---

[15] *Ethridge v. TierOne Bank*, 226 S.W.3d 127, 132 (Mo. banc 2007) (citing *Ethridge v. Perryman*, 363 S.W.2d at 698).

The best that can be said about this argument is that it has "chutzpah!"[16]

As a matter of law, Kraus-Anderson's security interest in the Trommel 1007 was extinguished when the Debtor paid off the loan secured by the Trommel 1007.[17] The fact that the financing statement remains on file has no bearing on the validity or efficacy of the underlying security agreement. Once a security agreement is extinguished, it cannot be resurrected to secure future debts, as Kraus-Anderson has attempted to do here.

Kraus-Anderson argues that its presence in this suit was necessary to protect its security interest, but the raison d'être of a security interest is to ensure payment on the indebtedness it secures. Here, the underlying indebtedness has already been satisfied, so there's no need to defend it. And the Court puts no stock in Kraus-Anderson's circular, and frankly ludicrous, argument that its loan hasn't been paid in full because it has incurred attorney's fees in, essentially, arguing that its loan hasn't been paid in full.

In sum, the Court finds that Kraus-Anderson has no secured interest in the Trommel 1007, it shall bear its own costs in this matter, and it is directed to terminate its financing statement in the Trommel 1007 within 30 days of the entry of this order.

## CONCLUSION

For the reasons stated above, the Court finds that Bank of the West has a first priority security interest in the Trommel 1007 and will therefore grant BOW's motion for summary judgment and deny NBKC's and Kraus-Anderson's cross-motions. The Court will enter a separate order directing the Debtor to pay to BOW the proceeds remaining from the sale of the Trommel 1007.

Entered this 8TH day of December 2011.

/s/ Jerry W. Venters
HONORABLE JERRY W. VENTERS
UNITED STATES BANKRUPTCY JUDGE

---

[16] A Yiddish term meaning "gall, brazen nerve, effrontery, incredible 'guts,' presumption plus arrogance such as no other word and no other language can do justice to." Leo Rosten, *Joys of Yiddish* (1968). Chutzpah is often defined as "that quality enshrined in a man who, having killed his mother and father, throws himself on the mercy of the court because he is an orphan."

[17] *See supra* n. 7.

A copy of the foregoing was mailed conventionally
or electronically to all attorneys of record.